GmbH, which I'll call SED Germany. This appeal presents two district court decisions for review. The first is the dismissal of this action under Rule 12b-6 based on undisputed factual inferences drawn from a French brief presented by X Blue that was a document outside the pleadings within the meaning of Rule 12d. And the second is the denial of appellant's motion for a preliminary injunction and a stay against the second filed New York arbitration based on the same undisputed factual inferences improperly drawn from the French brief without taking judicial notice of the French brief and without an evidentiary hearing. As to the appeal from the dismissal, that appeal is controlled by Judge Walker's opinion for the court in Palin v. New York Times, which was decided about six weeks after briefing closed in this appeal. Palin held that the procedure in Rule 12d is mandatory and an obligation of the court should it be followed or object when it isn't. Palin explained that under Rule 12d, the district court had only two choices, either to exclude the French brief from its consideration on the motion to dismiss or else to convert the dismissal motion to a summary judgment motion and afford all parties the opportunity to present supporting material. As in Palin here, the district court did neither, and its dismissal of the complaint must be vacated. So you say that's the case even though the document, the French brief, was properly on the district court docket and had been submitted in connection with the motion for preliminary injunction. Is that right? Yes, Your Honor, because the focus has to be on what the district court did with it, not the manner in which it came before the district court. It's undisputed that East Blue submitted that brief originally in opposition to the preliminary injunction motion. But in its reply brief, in support of the motion to dismiss, it made reference to the French brief specifically as additional support for the motion to dismiss, and more importantly, in the decision, the district judge relied on the French brief as the ground of his decision. Wouldn't it, under the preliminary, as far as the preliminary injunction motion was concerned, however, it would be admissible, right, as long as you could take judicial notice of it? If you could take judicial notice of it, the question is, what was being taken judicial notice of? The mere fact of taking judicial notice, which he didn't do, by the way. He didn't take judicial notice. And did he meet the requirements for taking judicial notice? Well, he did not meet the requirements of Evidence Rule 201e. And in any event, taking judicial notice doesn't let everything come in. He has to notify the parties not only that he's taking judicial notice of the brief, but the tenor of the matters of which, in the brief, that he wants to take notice of. And that would have required identifying the particular statements in the brief that he was relying on and the factual inferences that he proposed to draw from those provisions of the brief, and letting the parties have an opportunity to be heard on that. None of that happened. What time – oh, please go ahead. Well, if – supposing that we accept your proposition, what would be said to countervail – what countervailing thing would be said? How would – if you had been given the opportunity to dispute the inference drawn by the court, what would you say? Well, first of all, the French brief is extremely vague about the denomination of the parties. It makes – it is a brief that's submitted by both – by the predecessors of both appellants. It makes arguments, however, some of which only apply to one of the two appellants, some of which may apply to all of them. Right. But what about the particular thing that the court focused on? Didn't it say with particularity that – isn't it a reasonable and proper, correct – not only reasonable, but correct construction, that it acknowledged SED Germany's amenability, but being subject to the arbitration agreement? Well, I don't believe that's the case, Your Honor, because it was a reference to, as I recall, to SAGEM. SAGEM had been used as a term by the other side throughout their brief, and this was a brief in response to that. And in addition – Wait a minute. Before you say – Yes. Go to the addition part. SAGEM in the brief was what? Both SEDs? Well, there's a footnote in the brief that's fairly unclear. It says that SAGEM refers to the companies, and it refers to both companies. However, later in the brief, there is reference – indeed, the footnote right underneath it, it says when we talk about the German company, we're going to call it SAGEM GmbH. And there are points in the brief later on where they criticize East Blue for having muddled up the identification of the parties and emphasized that the two are separate. So I think it's not clear-cut. But the opening footnote in the brief says SAGEM and SAGEM companies refer to the companies SAGEM DS and SAGEM GmbH. Yes, ma'am, but right underneath it, it says – in the second footnote in the brief, it says that SAGEM, the German company, is going to be referred to as SAGEM GmbH. That second footnote also – I mean, we're parsing it closely, but that the first footnote arguably refers only to the initial reference. I don't want to get too much in the weeds with it. Let me ask, is there evidence that you would want to put before the district court if we were to agree with your proposition that the further proceedings are needed before SAGEM Germany could be – or said Germany could be dismissed? Yes. We would – we would want to put evidence before the court with regard to the people who wrote the brief, their purpose in writing the brief, and the reference that they – the reference that they made to the parties in the brief. But isn't it extrinsic to the brief based upon, you know, on the basis that the brief is ambiguous? That's correct, Your Honor. I mean, the idea here is that before the district court drew inferences based on that not entirely clear reference, the inference of an intentional assumption – I mean, he's making a factual determination that said Germany, by saying whatever it said in that brief, intentionally assumed the obligation to arbitrate in a situation where it had not signed the arbitration agreement. That's a factual finding. Is there other conduct – evidence regarding conduct of said Germany that you would deduce that would be inconsistent with the notion adopted by the district court that by its conduct, as well as by these statements, said Germany is bound by the arbitration provisions of the agreement? Well, I think it's clear that in the – for example, in the New York arbitration  That's after the fact. Well, I understand. That's far after the fact. Yes. But I think, yes, there is evidence that said Germany considered itself separately. It was represented separately in a number of the proceedings. And we would be able to present evidence. Now, I can't predict if the district court would find in our favor or not. But all this – all this appeal is about is that we ought to have an opportunity to try. All right. Thank you very much for your – Let me ask – Go ahead, please. What is the status now of the Paris arbitration? Now, the status of the Paris arbitration is that there has been a partial award rendered finding that the Paris tribunal has jurisdiction over all claims between all parties. Contrary to the suggestion in the motion opposition, that Paris award is final and definitive as to the issue of jurisdiction. It's called a partial award because it doesn't yet address the merits. But as to jurisdiction, it's not subject to change. And in the New York arbitration, we asked the New York arbitrators to rule first on their jurisdiction before going to the merits. They declined to do that. So we now have a situation in which both arbitrations are guaranteed to go the whole route simultaneously and in parallel. Thank you.  Judge LaValle has a question. Yes, sir. If I'm correct, it's my impression that you did not call this problem to the district court's attention and ask for the opportunity to supply whatever arguments and factual material you would have wanted to. Is that correct? That is accurate, Your Honor. And I say that for my review of the record. I was not counsel in the district court. But the fact remains that just as the party in Palin did not object to the conduct of the evidentiary hearing, that doesn't stop Rule 12D to be applicable. The district judge has an obligation to apply Rule 12D whether or not the party has asked for it. Okay. Well, you have two minutes of rebuttal. Ms. Donovan. Good morning, and may it please the Court. My name is Caroline Donovan. I represent the Respondent Appellee Ixblu. I want to focus on the district court's dismissal of the petition. There are three reasons to affirm that dismissal. One is that the statements in the French brief are SED Germany's own statements. They're clear and unambiguous, and they demonstrate its intent. They demonstrate, in fact, its acting under the arbitration provisions of the license agreement. The second point is that SED Germany is actually not prejudiced by the district court's consideration and reliance on the French brief. SED Germany, in fact, had notice and opportunity to respond to the French brief, and they did so. The third ---- Let me ask you. The denial of the motion for preliminary injunction is one thing, but the dismissal of the complaint is another, right? That's correct. And so how do you justify the use of the French brief in the dismissal of the complaint? So the French brief is the type of document of which a court could take judicial notice, and I think the parties here agreed on the general premise that some of these documents and foreign proceedings could inform. But it didn't actually take judicial notice or inform your adversary of the fact that judicial notice? No, we don't know that it did take judicial notice, this Court, in the first instance. Well, it considered a matter totally outside of the complaint. We believe it's not a matter that was literally attached to the complaint. Documents like this that are susceptible to judicial notice may be considered during the course of a motion to dismiss, and we cite case law for that proposition. I'd want to also just ---- Was that matter litigated before the district judge? It was not litigated. It was not litigated. I would like to distinguish just for a moment my colleague's reliance on Palin. It's a different case. That was drawing a credibility determination at points. The judge did nothing of the like. My colleague refers to it as a factual inference. What the district court did was look to the French brief and it said, how did SED Germany act? It availed itself of the arbitration provisions in the license agreement when it was before the French court. And it said, and it does not matter if it said 9b or 9c, it said, we shouldn't be here because 9, in this case, 9c applies. SED Germany acted as if the arbitration provisions applied to it. So the judge wasn't taking a particular statement in the brief. It was actually taking the assertion that SED Germany made. Isn't that notion really more like a judicial estoppel argument? We don't believe it's a judicial estoppel argument. And I know this point was raised below and it was briefed or it was briefed on appeal. The judge relied on TransRaw, and TransRaw makes two arguments. TransRaw uses the assumption argument, which is what the district court relied on, and it also makes a judicial estoppel argument. And that requires that the parties have taken, you know, inconsistent previous positions and prevailed. The judge didn't do that. The district judge used the assumption theory and applied it correctly. This is very similar, nearly analogous, to the TransRaw situation. You had a nonce. Scalia. It doesn't seem to me to be an acknowledgment that the arbitration agreement applies. I mean, to say to the Court, if you assume that the arbitration agreement applies to us, it doesn't provide for arbitration here, so you've got to dismiss the arbitration, that's not, that's not, it seems to me, equivalent to saying we acknowledge that arbitrate the arbitration agreement applies to us. Say, even if you assume it does, it doesn't justify this arbitration. We view it as actually SED Germany showing up in 2015 and arguing to a French court that a different provision of the arbitration agreement controls, and really it was. It was a different kind of proceeding. That's correct. It didn't have to do with these issues. And secondly, there was no opportunity for, in this case, for your adversary to make any kind of presentation to explain the French brief in the way that they wished, and then you could have opposed it. There would have been, this is extrinsic to the pleadings, totally extrinsic to the pleadings. So we disagree that they didn't have an opportunity to rebut this. And our first motion, our first filing in this litigation was our opposition to the motion for preliminary injunction. And that's where we invoked the French brief. Our counsel, our opposing counsel, directly responded to that in their reply. And I appreciate that we're talking about two different forms of pleadings. However, what they said is meaningful because they did not contradict the actual substance of that statement that it made. And this is at docket entry 21 footnote 2. What they said, and they said this in the footnote, was, quote, when Petitioners argued nearly three years ago that the claims fell under section 9C of the license agreement, it was in the context of ex-pluse claims for an expert assessment and for Petitioners to produce documents which is only allowed under section 9C, not section 9B. Petitioners there was SED and SED Germany. This gets us back to the point that my colleague was just discussing. SED Germany was not party to the arbitration agreement, was it? It was not party to the 1993 license agreement. It assumed to it. We also view it, as we can point to other evidence, and this was other evidence that we had argued below, the settlement agreement of 2011. SED Germany was a party to the settlement agreement. The settlement agreement did two things that are important. The settlement agreement incorporated a dispute resolution clause that allowed the dispute resolution clause of the license agreement, that Article 9 arbitration provisions, to stand. SED Germany signed that 2011 settlement agreement. So we view, we don't even need to get to the assumption by conduct. They have assumed by signing. They are signatories at this point. They are also part of the SDS group. The SDS group is the collection of Saffron and its predecessor companies. And SED Germany is one of them. It is the ability to be granted sublicenses under the license agreement. So to Your Honor's points, there is plenty of other evidence, even if we don't get to the assumption. I want to just respond briefly on the identities of the parties and the suggestion that the denominations are in any way imprecise. The Saffron companies and their predecessors are extremely sophisticated, represented by counsel in France and in the U.S. And they define terms, and they define them clearly. And the reference to Segem under 9C is a reference that we have to take at its word. This is what lawyers for both parties said for both parties. And, again, I look at the response in the footnote in the reply brief. The lawyers who represented Saffron and the SED companies in the district court proceedings below similarly made that argument. And we have to credit it. So now we're in a situation where there's a Paris partial award, and if we affirm here, then it goes forward to New York, and you have competing arbitrations. How can that be justified? So that's the situation that the parties bargained for, and that's the arbitration. Scalia. Bargained for both to go simultaneously? It's one of the potential results of that. It looked to me like it was alternative, the way the arbitration agreement is written, between the two sections. I think it we're seeing now that it's one of the plausible outcomes of the agreement. And I think if this Court views that SED Germany has assumed to or signed on to the license agreement and has taken on the obligation to arbitrate, that question of arbitrability is fundamentally one. These were courts, district courts, or a trial court or a court in Paris and a court in this country. Presumably there would be comedy, there would be questions of first file, there would be all sorts of issues. And it's unlikely that the United States proceeding would continue, right? That may be the case. However, the arbitrators in this case are perfectly capable of handling those questions. And these are, again, very sophisticated parties, very sophisticated arbitrators. They are capable of handling that first filed rule. In the same way, I would add, we don't view these as like arbitrations in the sense that the identities of the parties is one of the essential elements to apply the first filed rule. SED Germany is not a party to the ad hoc arbitration in France. That is essential for our claim and for the relief that we're seeking before the ICC in New York. I'll move on just briefly for the motion for preliminary injunction. Two different proceedings. We believe the appellants have nowhere near met their burden to show that the judge abused his discretion. On the basis of the French brief that was before him on that matter, it's well within the permissible options that he deemed SED Germany a signatory to that agreement. There was no request for a hearing, which is what my colleague refers to in their papers. And the failure to request a hearing on their motion for a preliminary injunction in fact waives it. And even if they requested a hearing, this particular issue is not one that needs to be resolved by a hearing because it was perfectly amenable to resolution on the face of the record, the paper record. And we go back to here. These are unambiguous objective statements by SED Germany in the French brief. This is not asking the judge to make inferences, to judge credibility, to do anything beyond take the words on the page for what they mean. And the words on the page were clear. And the words on the page said that SED Germany was availing itself of the arbitration provisions in the license agreement before the French court. Unless Your Honors have anything further, we'll rest on the paper. It was availing itself of those provisions to argue to the court that this was not arbitrable. That's correct. And they were arguing to the court. So the difference in position, I would say, is Ix Blue has never once disputed its obligation to arbitrate these disputes. Frankly, neither has SED. SED Germany has insisted that it needn't arbitrate. However, at an earlier point in time, SED Germany was comfortable going to the French court and saying, we can't be here. And it wasn't saying SED make this argument. SED and SED Germany argued to a French court, we can't be here because these disputes have to go to a different arbitration. If SED Germany ought not to have been there because it wasn't subject to the arbitration provisions, it wouldn't have been capable of making that argument because that wouldn't be a true argument for it. It wouldn't be the case that 9C should have applied. Because if no arbitration provision applied to it, then it wouldn't have had another provision to point to. I don't really understand this argument. If one has two different arguments to defeat the thing that one wants to, you're saying they had to argue the other one, to argue that the terms of the arbitration agreement don't call for them to be in the French arbitration. That's not the same thing as saying that the — as acknowledging that the terms of the arbitration agreement do require them to be in some arbitration. I think if it had been the case that it viewed itself as — that if it had not conducted itself under the arbitration provisions of the license agreement, I cannot envision why it would make the argument that 9C applied to it. And I don't think that there's a dispute that it was SED Germany and SED making that argument to the French court. All right. Thank you very much, then. We'll hear rebuttal. Thank you, Your Honor. Just a couple of points. First of all, my colleague appears to argue that the French brief was not outside the pleadings. The test is whether it was relied on heavily. That's the quote in — as the Palin opinion said, whether it was relied on heavily in the petition. Not only wasn't it relied on heavily, it wasn't relied on at all. It's not mentioned at all. Secondly — Is she correct, however, that there was a response made to it and to its meaning and substance in the opposition to the preliminary injunction? Well, we made a response to it with regard to the preliminary injunction. Their entire opposition — their entire argument about assumption of the obligation to arbitrate was based on the settlement agreement that you heard about, the 2011 settlement agreement, which Judge Kaplan did not reach at all. So he didn't rely on that. The decision is not based on that. It was only at a time when we had no longer any opportunity to respond to them. And that was the time in their reply brief in support of the dismissal motion was the first time that they had one sentence and a footnote relying on the French brief in support of the dismissal motion. And again, just to confirm, though, you didn't seek any reconsideration pointing that out to the district court? We did not. Okay. And I don't believe there's an obligation to seek reconsideration, especially since the district court's opinion made quite clear the view that the district court had, and I thought — it seems to me that that would have been a vain effort. It was a considered opinion of the district court, and we respect his decision. Footnote 25 in Palin specifically says that credibility and the drawing of factual inferences are examples of things that cannot be done properly on summary judgment. And again, that's the second part of why this case — this decision has to be vacated. Not only was the case not — the motion not converted, but the decision was made based on resolution of a factual issue of intent, which even if it had been converted would not properly have been made on summary judgment. It's important with regard to the estoppel arguments to note that the French court did not rule in reliance on the jurisdictional objections. It rejected all the jurisdictional objections. It went on to say that Ixclu's application was insufficient on its merits. Thank you. I think your time has expired. Thank you, Your Honor. All right. We'll take the matter under advisement. Thank you for your arguments.